```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

| | |
|---|---|
| **DORIS MURRAY,** | |
| Plaintiff, | Case No. 11 C 8887 |
| v. | |
| **CAROLYN W. COLVIN,** Acting Commissioner of Social Security, | Hon. Harry D. Leinenweber |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Doris Murray ("Murray") brings this action against her current employer, the Social Security Administration (the "SSA"), alleging that her supervisor discriminated against her on account of her age, color, disability, and race, retaliated against her for filing inter-agency Equal Employment Opportunity ("EEO") complaints, and assigned her an intolerable workload designed to force her to retire. The SSA has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, the Motion is granted.

### I. BACKGROUND

Murray is a 70-year-old, dark-skinned, African-American woman who suffers from hypertension, a respiratory condition, knee and foot problems that require her to walk with a cane, and stress. She began her employment at the SSA in 1964 and currently holds the

position of Technical Expert.  In 2006, Murray was assigned to a position within the SSA's Center for Security and Integrity ("CSI").  Robert Coplin ("Coplin"), who serves as the CSI's director, is Murray's immediate supervisor.  Coplin is approximately 54 years old and is African-American.

Initially, Coplin expressed some displeasure about having Murray placed on his team because of the circumstances in which she had left her previous position.  According to Coplin, Murray had been "forced out" of her old team due to a problematic relationship with her supervisors.  (Coplin Dep. at 25, ECF No. 48-1).  Coplin conveyed his feelings about Murray at a meeting with two other individuals from his staff, during which he wondered aloud why Murray, "who ha[d] a long commute, is not in the best of health, [and] is up there in years, continue[d] to hold on to a job that [was not] giving her anything."  (*Id.* at 28).  Coplin further stated his opinion that, since Murray had "maxed out" her pension benefits, she "should just go ahead and retire."  (*Id.*).

Although Murray contends that Coplin also disclosed his intention to assign her a workload designed to "force her to retire," the only basis for that allegation is a question her counsel posed to Coplin at his deposition.  Coplin denied ever making such a remark, however, and because Murray was not present at the staff meeting and a lawyer's questions to a witness are not evidence, the Court finds Murray's allegation in that regard to be

unsupported by the record. Accordingly, the alleged comment will be disregarded.

In any event, Murray claims that her workload was first adjusted sometime in mid-2010. Each year, CSI employees are responsible for completing security audits at various SSA regional field offices. In 2010, Murray was assigned field site visits at three offices in Michigan. After completing one of these site visits, however, she fell seriously ill and was hospitalized. Although Murray returned to work for a short period thereafter, she continued to take numerous sick days and eventually applied for extended medical leave. At a staff meeting on May 5, 2010, Coplin announced that he was unsure if Murray would be able to complete her audits in time for their deadline in August. Consequently, Coplin sought volunteers to cover Murray's remaining two site visits.

As a replacement for her previously assigned work, Coplin tasked Murray with the responsibility of managing six state agencies that the SSA contracts with to make medical determinations on disability claims. This assignment required Murray to oversee nine separate Disability Determination Services locations ("DDSs") comprised of a total of approximately 3,000 employees. Although Murray contends that this level of responsibility ordinarily would be shared among several specialists, she did not voice any concerns to Coplin about her workload and there is no indication that she

struggled to adjust to her new assignment. Indeed, Murray believes that she did an "outstanding job" and that the DDSs for which she was responsible are now running "better than . . . ever." (Pl.'s Local Rule 56.1 Resp. to Def.'s Stmt. of Facts ("Pl.'s 56.1 Resp.") ¶¶ 23-24, ECF No. 49).

Despite her apparent success, Murray alleges that her performance ratings suffered in 2010 because she completed fewer site visits than she had performed in previous years. While Murray's overall performance evaluation rating of "successful contribution" remained the same from 2009 to 2010, her ratings in two individual categories declined slightly: in 2009, she earned two 3's and two 5's on a scale of 5 for each performance category but, in 2010, she received all 3s. Coplin explained that, in 2010, he lowered Murray's ratings in the categories of "participation" and "achieves business results," because of her frequent absences, late work assignments, and postponing and rescheduling of reviews.

Although Murray contends that her lower numerical average resulted in her no longer qualifying automatically for a performance-based monetary Recognition of Contribution ("ROC") award, she nevertheless did receive ROC awards in both 2009 and 2010. Her 2010 award was $120 lower but that was because ROC awards are divided evenly among all employees who qualify in a given year and the total prize money available varies from year to year.

Since joining the CSI, Murray has filed a number of inter-agency EEO discrimination complaints regarding Coplin. In 2006, Murray submitted a complaint alleging that Coplin had expressed an intention to force her to retire in retaliation for her filing a previous EEO complaint against him. Thereafter, in 2010, Murray filed a complaint alleging that Coplin's decision to reassign her two remaining site visits constituted unlawful workplace discrimination. In 2011, Murray filed yet another EEO complaint in which she alleged that Coplin had been hostile toward her and assigned her an "unfair" workload. Upon investigation, the SSA determined that both Murray's 2010 and 2011 complaints were meritless. Her 2006 complaint, however, remains pending before the SSA following a remand from the Equal Employment Opportunity Commission ("EEOC").

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. *Id.* If the moving party satisfies its burden, the non-movant must present evidence sufficient to demonstrate that a genuine factual dispute

exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). In doing so, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Sarver v. Experian Info. Solutions,* 390 F.3d 969, 970 (7th Cir. 2004). Rather, it must demonstrate "through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial." *Knight v. Wiseman,* 590 F.3d 458, 463–64 (7th Cir. 2009).

## III. ANALYSIS

### A. Abandoned Claims

In her Amended Complaint, Murray raises a myriad of discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), the Age Discrimination in Employment Act (the "ADEA"), and the Americans with Disabilities Act (the "ADA"). In her papers in opposition to the SSA's Motion for Summary Judgment, however, Murray chose to defend only her ADEA discrimination and Title VII retaliation claims. Consequently, the remaining theories asserted in Murray's Complaint are deemed abandoned. *See, e.g., Palmer v. Marion Cnty.,* 327 F.3d 588, 598 (7th Cir. 2003) (claims not pressed in opposition to a motion for summary judgment are deemed abandoned). Accordingly, summary judgment is granted in favor of the SSA on those claims.

## B. Age Discrimination Claim

The ADEA prohibits discrimination on the basis of age with respect to employees who are over the age of forty. 29 U.S.C. § 623(a)(1); 29 U.S.C. § 631(a). To sustain a case for age discrimination under the ADEA, a plaintiff must show that the employer's discriminatory action was "actually motivated" by age such that "age must have played a role in the employer's decision-making process and had a determinative influence on the outcome." *Mullin v. Temco Machinery, Inc.,* 732 F.3d 772, 776 (7th Cir. 2013). Proof of such motivation may be established either directly, through direct or circumstantial evidence of intentional discrimination, or indirectly, through a subset of circumstantial evidence that conforms to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-03 (1973). *See, Martino v. MCI Communications Servs., Inc.,* 574 F.3d 447, 452 (7th Cir. 2009) (explaining the distinctions between the direct and indirect methods of proof).

Under either the direct or indirect method, the plaintiff must demonstrate that she suffered an adverse employment action. *Chaib v. Indiana,* 744 F.3d 974, 982 (7th Cir. 2014). An adverse employment action is a "materially adverse change in the terms and conditions of employment, [which must be] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Fyfe v. City of Ft. Wayne,* 241 F.3d 597, 602 (7th Cir. 2001) (internal

quotation marks omitted). Typical examples of actionable adverse employment actions include, "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer,* 662 F.3d 448, 453-54 (7th Cir. 2011). However, "not everything that makes an employee unhappy is an actionable adverse action." *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 780 (7th Cir. 2007) (quotation marks omitted). Rather, there must be some showing that the alleged employment action caused a significant "quantitative or qualitative change in the terms or conditions of [the plaintiff's] employment or some sort of real harm." *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1116 (7th Cir. 2009).

Although Murray contends that Coplin discriminated against her on the basis of her age by removing her from her two remaining site visits, reducing her performance ratings in two categories, and assigning her an unreasonable DDS workload in an effort to force her to resign, these incidents neither subjected Murray to nor resulted in any adverse employment action. As an initial matter, there is no evidence that Murray was affected negatively by Coplin's decision to reassign her site visits to other employees.

While Murray claims that she received lower performance ratings as a result, it is difficult to see how that could be the case since there was no requirement that CSI employees complete any particular number of site visits. Moreover, Murray's 2010 performance evaluation itself indicates that her ratings declined due to her frequent absences and late work assignments, rather than her inability to complete her two remaining site visits. (Def.'s Local Rule 56.1 Stmt. of Facts ("Def.'s 56.1 Stmt.") ¶¶ 19, 28, ECF No. 43)

In any event, Murray's reduced performance ratings had no effect on the terms or conditions of her employment. Indeed, despite receiving slightly lower marks in the categories of "participation" and "achieves business results," Murray's overall rating did not change from 2009 to 2010. Murray was neither denied compensation nor deemed ineligible for a ROC performance award as a result of her decreased scores and there is no indication that she was reprimanded or penalized in any other way in connection with her performance evaluation. Because "negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions," *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001), Murray's 2010 performance review is not actionable.

Lastly, with regard to Murray's complaints about the DDS workload Coplin assigned her in place of her site visit

responsibilities, the general rule is that "[a] simple increase in workload is not enough to show an adverse employment action." *Buttron v. Sheehan,* No. 00 C 4451, 2003 WL 21801222, at *18 (N.D. Ill. Aug. 4, 2003); *see also, Han v. Whole Foods Mkt. Grp., Inc.,* --- F.Supp.2d. ---, 2014 WL 2448927, at *11 (N.D. Ill. May 28, 2014) (collecting cases). Occasionally a substantial increase in job responsibilities can amount to an adverse action when shown to be excessively disproportionate to the workloads of other similarly situated employees, *see, Feingold v. New York,* 366 F.3d 138, 153 (2d Cir. 2004), or when accompanied by a material change in working conditions or a functional decrease in salary, *see, Minor v. Centrocor, Inc.,* 457 F.3d 632, 634 (7th Cir. 2006). Neither is the case here.

At the outset, Murray's only evidence that her workload was any heavier than that of other CSI employees is her subjective belief that it was disproportionate. Although Murray contends that she was charged with overseeing a DDS workload that ordinarily would have been shared among several employees, any additional responsibilities she may have assumed were balanced by the fact that she no longer was responsible for completing any work related to her two remaining site visits. Thus, even if Murray felt that her new DDS responsibilities were more challenging than her previous assignments, she has adduced no proof that would permit a

reasonable jury to conclude that her overall workload was more onerous relative to the workloads of other CSI employees.

Nor has Murray shown that her DDS workload altered any of the essential aspects of her employment at the SSA. Critically, Murray does not allege that she was expected to work additional hours or that her new assignments stymied opportunities for future advancement or resulted in a reduction in salary or deprivation of benefits. There also is no evidence that would suggest that Murray's increased responsibilities were so oppressive that they created a hostile work environment or employment conditions so intolerable that "a reasonable person would be forced into involuntary resignation." *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000). While the Court does not doubt that Murray may have been displeased with some of the tasks that Coplin assigned her, there simply is insufficient proof that her workload constituted a material change in her working conditions giving rise to an adverse employment action. *See, e.g., Darnell v. Target Stores,* 16 F.3d 174, 179 (7th Cir. 1994), overruled on other grounds by *Hill v. Tangherlini,* 724 F.3d 965 (7th Cir. 2013) (no adverse employment action where plaintiff "showed only that his job was difficult, and required him to work long hours and perform unpleasant tasks").

Although the lack of an adverse action is enough to spell the end to Murray's ADEA claim, the Court wishes to emphasize that this

is not a case that would have proceeded had Murray been able to show a material adverse change in the terms or conditions of her employment. Murray's entire discrimination case hinges upon two isolated comments that Coplin made at a staff meeting sometime in 2006, during which he stated that Murray should "just go ahead and retire" because she was "getting up there in years" and had "maxed-out" her benefits. Stray remarks, such as these, however, are probative of unlawful discrimination only if made around the time of and in reference to the alleged discriminatory action, *Teruggi v. CIT Grp./Capital Fin., Inc.,* 709 F.3d 654, 661 (7th Cir. 2013) (quotation marks omitted), which, in this case, they were not. Rather, the comments about which Murray complains were made *four years* prior to the events leading to this lawsuit and do not refer to any employment action at all. Accordingly, these comments are insufficient to create a triable issue of fact as to whether Coplin's decision to adjust Murray's workload was motivated by discriminatory animus.

For these reasons, summary judgment is granted in favor of the SSA on Murray's ADEA discrimination claim.

### C. Title VII Retaliation Claim

Murray also advances a retaliation claim, in which she alleges that Coplin violated Title VII by calling her a "problem child" and making "repeated negative comments" about her filing of an inter-agency EEO complaint against him. That claim, however, finds no

support in any of the evidentiary materials submitted in this case. Indeed, neither Murray's Local Rule 56.1 statements nor anything else in the record contain any mention of Coplin's "problem child" remark or any of the other "negative comments" he is alleged to have made. Rather, the "facts" upon which Murray relies appear only in a three-page excerpt of an appeal brief she filed with the EEOC, which her counsel in this action submitted as an exhibit that he purported to "incorporate[] by . . . reference" into Murray's summary judgment opposition papers. (*See*, Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp. Mem.") at 8, ECF No. 48).

Courts in this District repeatedly have held that "facts asserted in a brief but not in a Local Rule 56.1 statement are [to be] disregarded in resolving a summary judgment motion." *Gray v. Cannon,* 974 F.Supp.2d 1150, 1162 (N.D. Ill. 2013); *see also, Cartwright v. Cooney,* No. 10 C 1691, 2013 WL 2356033, at *1 (N.D. Ill. May 29, 2013) ("merely including facts in a responsive memorandum is insufficient to place an issue before the court to defeat summary judgment"); *MB Fin. Bank, N.A. v. Walker,* 741 F.Supp.2d 912, 916 (N.D. Ill. 2010) ("Unsupported statements in briefs are not evidence and do not count."); *Byrd-Tolson v. Supervalu, Inc.,* 500 F.Supp.2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"). Because Murray has not offered any evidence that

comports with the requirements of basic summary judgment procedure or this Court's Local Rules, the SSA is entitled to summary judgment on her Title VII retaliation claim.

## IV. CONCLUSION

For the reasons stated herein, the SSA's Motion for Summary Judgment [ECF No. 41] is granted.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date:9/19/2014